# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**323**

**CA 16-00435**

PRESENT: CARNI, J.P., LINDLEY, DEJOSEPH, TROUTMAN, AND SCUDDER, JJ.

---

JULIE CLACK AND COLLIN CLACK, INDIVIDUALLY AND
AS PARENTS AND NATURAL GUARDIANS OF AN INFANT,
NATHALIE CLACK, PLAINTIFFS-APPELLANTS,

V                                        MEMORANDUM AND ORDER

MAGDI E. SAYEGH, M.D., ET AL., DEFENDANTS,
SISTERS OF CHARITY HOSPITAL, CATHOLIC HEALTH
SYSTEM, INC., JODI BALL, M.D., JAIME REHMANN, M.D.,
AND ROBIN BOCHACKI, N.N.P., DEFENDANTS-RESPONDENTS.

---

FARACI LANGE, LLP, BUFFALO (JENNIFER L. FAY OF COUNSEL), FOR
PLAINTIFFS-APPELLANTS.

HARRIS BEACH PLLC, BUFFALO (JASON T. BRITT OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS.

---

Appeal, by permission of the Appellate Division of the Supreme
Court in the Fourth Judicial Department, from an order of the Supreme
Court, Erie County (Donna M. Siwek, J.), entered November 30, 2015.
The order granted the motion of defendants Sisters of Charity
Hospital, Catholic Health System, Inc., Jodi Ball, M.D., Jaime
Rehmann, M.D., and Robin Bochacki, N.N.P., for a protective order.

It is hereby ORDERED that the order so appealed from is
unanimously reversed on the law without costs, and the motion is
denied.

Memorandum: Plaintiffs, the biological parents of Nathalie Clack
(child), commenced this action seeking damages for injuries allegedly
sustained by the child as a result of defendants' negligence during
the prenatal care of plaintiff Julie Clack (mother), the labor and
delivery of the child, and the care of the child in the neonatal and
pediatric intensive care units. During the deposition of nonparty
Kathryn Sexton, the certified nurse midwife (CNM) who helped treat and
"monitor" the mother during her labor and an employee of defendant
Sisters of Charity Hospital (Sisters Hospital), plaintiffs' attorney
sought to ask Sexton questions about fetal monitor tracing strips
(strips) that were generated between Sexton's last progress note at
12:10 p.m. and the time she last visited the mother's labor and
delivery room, i.e., 1:45 p.m. Sexton had testified that, although
she did not actively interpret those strips, she had the ability to
review those strips at a computer in the nurse's station and could
return to the mother's room "if there's a reason . . . to go back into

the room."  Sexton further testified that the strips for all of the patients being monitored were "posted on a monitor, . . . so [she] could have glanced at them."  At another point in her deposition, Sexton admitted that she "may have been watching the strip [sic]."

Defendants' attorney objected to any questions related to the strips generated during that time period and ultimately halted the deposition.  He contended that the questions violated the holding of *Carvalho v New Rochelle Hosp.* (53 AD2d 635), which has been cited authoritatively by this Court (*see e.g. Dare v Byram*, 284 AD2d 990, 991; *Bryant v Bui*, 265 AD2d 848, 849; *Forgays v Merola*, 222 AD2d 1088, 1088).  Defendants Sisters Hospital, Catholic Health System, Inc., Jodi Ball, M.D., Jaime Rehmann, M.D., and Robin Bochacki, N.N.P. (collectively, defendants) moved for a protective order "to resolve the question of whether or not CNM Sexton [could] be asked to interpret fetal monitoring strips recorded between 12:10 p.m. and 1:45 p.m."  We conclude that Supreme Court erred in resolving that question in favor of defendants.

Although *Carvalho* and its progeny have established that "one defendant physician may not be examined before trial about the professional quality of the services rendered by a codefendant physician if the questions bear solely on the alleged negligence of the codefendant and not on the practice of the witness" (53 AD2d at 635), the questions at issue herein are not precluded by *Carvalho*. Contrary to the contention of defendants, the questions posed to the witness, i.e., questions about the strips generated during a time that the witness was supposed to be monitoring the mother's care, and which the witness may have "glanced at" or "watch[ed]," "relate[] directly to [the witness's] care and treatment . . . and . . . were appropriate" (*Lieblich v Saint Peter's Hosp. of the City of Albany*, 112 AD3d 1202, 1205).

Based on our resolution, we do not address plaintiffs' remaining contention.

Entered:  March 24, 2017                    Frances E. Cafarell
                                            Clerk of the Court